# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JOHN A. WILLIAMS, JR.,        }
                              }
      Plaintiff,           }
                              }
v.                          }     **Case No.:  2:15-cv-02252-RDP**
                              }
**STATE OF ALABAMA DEPARTMENT**  }
**OF CORRECTIONS, et al.,**        }
                              }
      Defendants.        }

## <u>MEMORANDUM OPINION</u>

This case is before the court on Motions for Summary Judgment filed by Defendant State of Alabama Department of Corrections ("ADOC") (Doc. # 32) and Defendant Talandria Nation (Doc. # 37). The motions have been fully briefed (Docs. # 33, 38, 45, 49, 52), and are ripe for decision. After careful review, with the benefit of oral argument,[1] and for the reasons explained below, the court concludes that Defendants' motions for summary judgment are due to be granted in part and denied in part.

## I.      Factual Background[2]

In August 2005, Plaintiff, a male, began working for ADOC as a stock clerk in the prison canteen at Donaldson Correctional Facility. (Doc. # 34-1 at 34-36). In October 2010, Plaintiff received a warning and a reprimand for tardiness. (*See* Doc. # 39-7) (describing tardiness

---

[1] The court commends all counsel for their presentations at oral argument.

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. Notably, most of the parties' factual assertions are undisputed. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

incidents that occurred on October 6, 2010 and October 20, 2010). And, in July 2013, Plaintiff received a formal warning for not approving his time card as required. (Doc. # 39-9).

In August 2013, ADOC hired Defendant Talandria Nation to manage the canteen. (Doc. # 34-6 at 18). Bonita Pharr worked as a stock clerk in the canteen, and Marcus Chaney also was assigned to the canteen even though he was a corrections officer cadet. (Docs. # 34-1 at 38; 34-6 at 25-26). Pharr, Chaney, and Plaintiff testified that Nation discussed her sex life at work. (Docs. # 34-1 at 54-60; 34-2 at 3; 45-4 at 2). Plaintiff stated that Nation began discussing her sex life at work in September 2013 and estimated that she made sex-related comments every day. (Doc. # 34-1 at 54, 57). For example, Nation disclosed to her coworkers that she had divorced her husband because he had impregnated a female friend with whom they both were involved romantically. (*Id.* at 45-46). According to Plaintiff, no one reported Nation's salacious statements because she was "the new authority figure" and she could be vindictive to employees who questioned her authority. (*Id.* at 60).

In September 2013, Plaintiff's wife passed away. (*Id.* at 15). Thereafter, according to Plaintiff's testimony, Nation asked him whether he had started having sex again. (*Id.* at 73). Plaintiff responded that he had not. (*Id.*). Nation then inquired whether he had received oral sex, and Plaintiff ended the conversation. (*Id.* at 73-74). Plaintiff perceived that Nation was propositioning him by initiating the conversation. (*Id.* at 74). Plaintiff has recounted that he reported Nation's "very questionable" professionalism and lack of "professional etiquette" to a higher-level supervisor, but he did not report specific details of Nation's explicit statements to that supervisor. (*Id.* at 75-77). Plaintiff also testified that Nation pinched his face and complimented his haircut as "nice" sometime between September and December 2013. (*Id.* at 91-92).

The Rule 56 record indicates that Plaintiff made a few complaints about Nation's behavior. Plaintiff told Nation that her conduct was unprofessional. (*Id.* at 124-25). Plaintiff also met with Donaldson's Equal Employment Officer and asked her about the protocol for filing a harassment complaint. (*Id.* at 126). The Equal Employment Officer explained to Plaintiff the process for submitting a complaint. (*Id.* at 130). Plaintiff could not recall during his deposition whether he filled out ADOC's harassment and discrimination complaint form.[3] (*Id.* at 124-26).

On October 24, 2013, Defendant Nation issued Plaintiff a corrective memorandum regarding his tardiness. (Doc. # 39-8). Nation recounted in the memorandum that Plaintiff had failed to clock in on time on October 17 and October 21, 2013, and had failed to follow the prison's call-in procedures on October 1, October 2, October 10, October 11, and October 23, 2013. (*Id.*). Nation instructed Plaintiff to "report to work daily by your designated shift schedule" and to report any absence at least an hour prior to the beginning of the shift. (*Id.*).

In December 2013, Chaney, the correction officer cadet, invited Plaintiff to accompany him to a strip club. (Doc. # 34-1 at 80-81, 83). Plaintiff initially agreed to attend the outing, but declined to attend when Nation "overheard that conversation and invited herself." (*Id.* at 83). Plaintiff did not report the invitation to a higher-level supervisor at ADOC. (*Id.* at 83-84). According to Plaintiff, on the day after he declined the invitation to the strip club, Nation disciplined him for failing to complete the bagging of prisoners' grocery orders. (*Id.* at 84-85). That morning, Plaintiff worked to complete the bagging, but Nation asked him why he had failed

---

[3]  Counsel for the parties disagree about whether Plaintiff complained about harassment to the Equal Employment Officer. Plaintiff asserts that he submitted to the officer an oral complaint of sexual harassment. (Doc. # 45 at 4-5) (citing Doc. # 34-1 at 126-27). Defendant ADOC asserts that Plaintiff complained to the officer about unfair treatment, not sexual harassment. (Doc. # 33 at 9) (citing Doc. # 34-4 at 1). As an initial matter, the testimony cited by Plaintiff does not indicate that he complained about sexual harassment during his meeting with the officer. But, even if the court accepts that averment as true, this factual dispute is immaterial because (1) Plaintiff does not need to show compliance with ADOC's harassment grievance procedure in order to pursue a Title VII sexual harassment claim based on a tangible employment action, and (2) Plaintiff has abandoned his Title VII hostile work environment claim by not arguing in support of that claim in his opposition brief.

to complete it the prior day.  (*Id.* at 87).  Plaintiff informed Nation that he had left before completing the bagging because he was unsure whether he had clearance for overtime.  (*Id.*).  Nation instructed Plaintiff and Pharr to write statements discussing why they had failed to finish bagging the groceries before leaving the canteen the prior day.  (*Id.* at 87-88).  While discussing the incident with Chaney, Plaintiff commented that he had only failed to finish "four damn bags."  (*Id.* at 168).  Warden Cheryl Price determined in April 2014 that Plaintiff had committed work rule infractions in December 2013 during the incident discussed above.  (Doc. # 39-11).  Price found that Plaintiff had been insubordinate towards Nation when responding to her questions.  (*See id.* at 2).  Plaintiff submitted a rebuttal to Warden Price, but she upheld the reprimand.  (*Id.* at 1).  Although Price recognized that Plaintiff made his insubordinate comment to a coworker, she noted that "the fact remains that the statement was made."  (*Id.*).

On December 10, 2013, Plaintiff clocked in late for work.  (Doc. # 39-10).  He received a formal warning for this offense in February 2014.  (*Id.*).

At some point, Plaintiff stopped communicating with Nation about matters unrelated to work.  (Doc. # 34-1 at 89-90).  He testified that Nation disciplined him fifteen to twenty times for failing to communicate properly, even though he continued to discuss job-related matters with her.  (*Id.*).  He asked Nation about her plan for operating the canteen, but she responded that he needed "to shut [his] mouth."  (*Id.* at 90-91).  Pharr has testified that Nation treated all of the canteen workers poorly, and unfairly punished all of them.  (Doc. # 34-2 at 2).

In January 2014, Nation discovered that Plaintiff had "keyed items into the system that were not listed on the hand written store slips submitted by the inmates."  (Doc. # 39-13 at 2).  Plaintiff testified that an earlier supervisor taught him that it was permissible to include additional small items in a prisoner's order at the pick-up so that the prisoner would receive their

weekly limit of canteen goods. (Doc. # 34-1 at 177-78). Plaintiff's former supervisor permitted this practice "[i]n order to speed up the process" of distributing orders to prisoners. (*Id.*). Plaintiff has denied that Nation instructed him to cease that practice before January 2014. (*Id.* at 179). In May 2014, Warden Price conducted a hearing regarding the infraction, during which Plaintiff explained his account of the incident. (*Id.* at 179-80). Price found Plaintiff guilty of the infraction and recommended a two-day suspension. (Doc. # 39-13 at 2). In August 2014, Kim Thomas, ADOC's former commissioner, reviewed the record of the hearing and Plaintiff's "overall work record." (*Id.* at 3). She approved Price's recommendation and suspended Plaintiff for two days for failing to follow his supervisor's instructions and not complying with policies and procedures. (*Id.*).

On February 3, 2014, Plaintiff clocked in one minute late because he could not get through security in time. (Doc. # 39-12 at 2). According to an ADOC letter, "[a] review of KRONOS reflects that [Plaintiff] clocked in at approximately 7:01 a.m."[4] (*Id.*). During his deposition, Plaintiff explained that, previously, employees at Donaldson had been allowed to clock in before being searched, but Warden Price moved the time clocks so that employees had to go through the daily search before clocking in. (Doc. # 34-1 at 156-57). In April 2014, Plaintiff received a written reprimand for his tardiness. (Doc. # 39-12). Plaintiff did not submit a rebuttal to the reprimand within five days. (*Id.* at 1). Therefore, Warden Price affirmed the reprimand. (*Id.*).

On March 3, 2014, Plaintiff "clocked into KRONOS" one minute late. (Doc. # 39-14 at 2). Plaintiff explained that "unforeseen circumstances" caused his tardiness. (*Id.*). In July 2014,

---

[4] Although the Rule 56 record does not specify what KRONOS is, the court understands it to be a computer-based timekeeping system. *See, e.g.*, *Martinez v. DHL Express (USA) Inc.*, 2016 WL 455394, at *7 (S.D. Fla. Feb. 5, 2016); *Earle v. Convergent Outsourcing, Inc.*, 2013 WL 6252422, at *1 (M.D. Ala. Sept. 5, 2013); *Anderson v. Perdue Farms, Inc.*, 604 F. Supp. 2d 1339, 1344 (M.D. Ala. 2009); *Hawkins v. Alfa Mut. Ins. Co.*, 2008 WL 11377702, at *2 (N.D. Ala. Nov. 10, 2008).

Plaintiff waived his right to a due process disciplinary hearing and accepted a three-day suspension for the infraction. (*Id.* at 4). In September 2014, Commissioner Thomas reviewed Warden Price's suspension recommendation, Plaintiff's waiver, and Plaintiff's work record before approving a three-day suspension. (*Id.* at 2-3).

In April 2014, Nation reviewed tickets keyed in by Plaintiff and "noticed that two (2) of the tickets reflected that inmates were given items in excess of the allotted limits." (Doc. # 39-16 at 2). Specifically, Nation observed that Plaintiff had given eight bars of soap to a prisoner when the limit was three per prisoner, and he had given two bags of Tootsie Rolls to a prisoner when the limit was one bag. (*Id.*). Plaintiff requested a disciplinary hearing for this infraction, and it was held in August 2014. (*Id.*). Warden Price served as the hearing officer. (Doc. # 34-1 at 187). Plaintiff denied receiving written protocols about product limits before the disciplinary hearing. (*Id.* at 188). According to Plaintiff, Nation never distributed such a protocol to the canteen workers, but "she presented a protocol" at the disciplinary hearing before Warden Price.[5] (*Id.*). Price found Plaintiff guilty of the infractions and recommended a three-day suspension. (Doc. # 39-16 at 2). In November 2014, Commissioner Thomas reviewed the record of the hearing and Plaintiff's disciplinary record before approving Warden Price's recommendation. (*Id.* at 3). Specifically, Thomas's memorandum outlines two suspensions, two written reprimands, and two warnings that Plaintiff had received between July 2013 and September 2014. (*Id.*). Plaintiff did not appeal Commissioner Thomas's decision to the State Personnel Board because he was unaware of his right to appeal. (Doc. # 34-1 at 189-90).

On June 30, 2014, Plaintiff "miscalculated several items" while conducting an inventory count in the canteen. (Doc. # 39-15 at 2). Nation discovered the miscalculations while entering

---

[5] Commissioner Thomas's disciplinary memorandum avers that Plaintiff received "instructional memorandums" about product limits in January 2014. (Doc. # 39-16 at 2). Plaintiff has disputed the accuracy of that finding.

inventory adjustments and recounted the inventory. (*Id.*). In July 2015, Nation reviewed count sheets submitted by Plaintiff and "noticed that there was an unusual amount of long Kool cigarettes being issued. When she inquired about the increase in long Kool cigarette sales, [Plaintiff] stated that [he] did not know that there are two (2) kinds of Kool cigarettes." (*Id.*). In September 2014, Plaintiff waived his right to a disciplinary hearing for the charge and accepted a two-day suspension. (*Id.* at 5). In October 2014, Commissioner Thomas reviewed Warden Price's recommendation, Plaintiff's waiver, and Plaintiff's work record before approving the suspension.[6] (*Id.* at 2).

In August 2014, Nation observed that Plaintiff appeared to be asleep for approximately two minutes. (Doc. # 39-17 at 2). In a written statement, Plaintiff admitted to nodding off. (*Id.*). During his deposition, Plaintiff testified that he was on a break when Nation observed him sleeping and that no one had told him that he was prohibited from sleeping while on break. (Doc. # 34-1 at 192-93). Plaintiff waived his right to a disciplinary hearing and accepted a two-day suspension. (Doc. # 39-17 at 4). Warden Price recommended a two-day suspension to Commissioner Thomas. (*Id.* at 2). In December 2014, Commissioner Thomas reviewed Price's recommendation, Plaintiff's waiver, and Plaintiff's work record before approving the two-day suspension for sleeping while on duty. (*Id.*).

On August 29, 2014, Plaintiff again "clocked in on KRONOS" one minute late. (Doc. # 39-18 at 2). Although a February 2015 ADOC memorandum states that Plaintiff had waived a disciplinary hearing, no waiver is included with the memorandum, and Plaintiff cannot recall

---

[6] Thomas's suspension memorandum states that Plaintiff violated ADOC's employee standards by failing to obtain approval for an absence from work. (Doc. # 39-15 at 3). However, the memorandum fails to describe any tardiness or unexcused absence in its narrative of the infractions. (*See id.* at 2). This discrepancy is immaterial, though, because the memorandum explains that the suspension is based on Plaintiff's poor performance and inattention. (*Id.* at 3).

whether he waived the hearing. (Docs. # 34-1 at 194; 39-18). William Sharp, ADOC's commissioner, reviewed Warden Price's recommendation, Plaintiff's purported waiver, and Plaintiff's work record before approving a three-day suspension for tardiness. (Doc. # 39-18 at 2-3).

In September 2014, Plaintiff submitted a written grievance to Gary Sullivan. (Doc. # 34-1 at 60-61). Plaintiff testified that the grievance concerned Nation's harassment. (*Id.* at 62). According to Plaintiff's deposition testimony, he reported to Sullivan that Nation "was using her position as a position of authority to try to be dictatorial . . . in just trying to run normal work operations." (*Id.* at 62-63). And, he informed Sullivan that "whenever you didn't take heed or you didn't just go according to what [Nation] wanted, then she [would] be vindictive and write you up." (*Id.* at 63).

After the six suspensions referenced above, Plaintiff's termination resulted from a January 2015 incident. Nation reported to Donaldson's business manager that Plaintiff refused to work in the canteen's snack line because he requested additional training. (Doc. # 34-1 at 199-200). The business manager discussed the incident with Plaintiff and Nation after Plaintiff completed passing out bags to prisoners. (*Id.* at 200). During this discussion, Plaintiff "referred to the canteen manager as being conniving, deceitful, and lowdown as hell." (*Id.*).

Later that same month (January 2015), Nation resigned from ADOC after Warden Price discovered intimate communications between Nation and a male prisoner. (*See* Doc. # 34-6 at 43, 60-63).

On March 2, 2015, Warden Price held a pre-termination hearing regarding Plaintiff's refusal-to-work infraction. (Doc. # 34-1 at 198). During the hearing, Plaintiff explained that he

had asked for a "crash course" on the snack line's procedures.[7]  (Doc. # 34-20 at 1).  Plaintiff admitted to Price that he had described Nation as "conniving, deceitful, and low down as hell." (*Id.*).  Plaintiff also asked Price to dismiss "all of the previous actions that were imposed against him."  (*Id.*).  Plaintiff argued that his disciplinary record should be cleared because he "did not have any issues" before Nation became his supervisor.  (*Id.*).  According to Price's memorandum, Plaintiff "was reminded of the fact that corrective action had been imposed against him even before Ms. Nation arrived."  (*Id.*).  Finally, Plaintiff disclosed to Price that he had observed "all of the indications of an inappropriate relationship" between Nation and a prisoner.  (*Id.*).  Price asked Plaintiff whether he had reported this information, and Plaintiff responded that he had included it in grievances submitted to Nation.  (*Id.*).  Nation was not present at the hearing (Docs. # 34-1 at 198-99; 34-20), and nothing in the Rule 56 record indicates that Nation testified during the hearing.  (*See generally* Doc. # 34-20).

Warden Price recommended that ADOC terminate Plaintiff.  (*Id.* at 2).  In the memorandum, she gave the following reasons for recommending his termination:

> While it is correct that Mr. Williams did utilize the grievance process, it is doubtful that he would turn his grievance in to his supervisor without at the very

---

[7]  Warden Price recorded the events that occurred during the hearing in a post-hearing memorandum that has been filed in the Rule 56 record.  (Doc. # 34-20).  Plaintiff reviewed the memorandum during his deposition and challenged some of its contents.  (Doc. # 34-1 at 205-10).  Plaintiff has argued that the court should disregard this Rule 56 evidence because Price "is an interested witness whose credibility on this and other material facts is at issue in this case."  (Doc. # 45 at 13).  The court disagrees for at least two reasons.  First, appellate courts have consistently held that a district court must credit uncontradicted testimony in the Rule 56 record that is not inherently implausible, even if it comes from an interested witness.  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007); *Stratienko v. Cordis Corp.*, 429 F.3d 592, 597-98 (6th Cir. 2005); *Traylor v. Brown*, 295 F.3d 783, 791 (7th Cir. 2002) (explaining that the court should consider uncontradicted testimony from a defendant company's employee at summary judgment).  Second, Warden Price's written memorandum is both inherently plausible and corroborated by other evidence.  *Cf. Hibiscus Assocs. Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 921 (11th Cir. 1995).  Namely, the undisputed portions of the memorandum are corroborated by Plaintiff's failure to dispute those statements in the memorandum when presented with it during his deposition.  (Doc. # 34-1 at 205-10).  *Cf. Wilcox v. State Farm Mut. Auto. Ins. Co.*, 253 F.3d 1069, 1071 (8th Cir. 2001) (affirming the admission of an employee's affidavit into the Rule 56 record where plaintiff "was given a clear opportunity to contradict [the witness's] affidavit but did not").  Additionally, Plaintiff could have filed an affidavit contradicting Price's account of the pre-termination hearing if he recalled it in more detail after his deposition.  No such affidavit has been filed.

least providing a copy to someone else; especially since the complaint was about his supervisor. There is no way to validate this allegation. However, the procedures allow for Mr. Williams to take his complaint to the next level should the supervisor fail to respond.

While Mr. Williams is of the opinion that the previous actions should be expunged from his record, the fact remains that each infraction was investigated and found to be legitimate and factual. While there were sufficient infractions to rise to the level of dismissal, there were several recommendations that were disallowed by this writer. There was nothing presented during this conference that would indicate that Mr. Williams had learned from his past errors. The discussion during the conference actually confirmed that Mr. Williams saw nothing wrong in his actions noted in the previous incidents.

(*Id.*). During her deposition, Price testified that she recommended Plaintiff's termination due to "[h]is overall performance and the incidents leading up to whatever that final incident was." (Doc. # 39-3 at 78). She also testified that she did not view Plaintiff's conduct to be severe enough to equal a terminable offense if it had been his first offense. (*Id.* at 93).

In March 2014, Commissioner Sharp reviewed Price's notice of intent to recommend dismissal, documents associated with the notice, and Plaintiff's overall work record. (Doc. # 34-19 at 2). He explained that Plaintiff had been charged with failing to follow a supervisor's instructions and non-compliance with ADOC's policies and procedures. (*Id.* at 1). He outlined the six suspensions, two written reprimands, and two warnings that Plaintiff had received between July 2013 and February 2015. (*Id.* at 1-2). Sharp terminated Plaintiff from ADOC effective March 20, 2015. (*Id.* at 2). Sharp notified Plaintiff that he could appeal the dismissal to the State Personnel Department within ten days. (*Id.*). Plaintiff did not submit an appeal to the State Personnel Board. (Doc. # 34-1 at 201).

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477

U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III. Analysis

The court begins its analysis by analyzing Plaintiff's Title VII claims against ADOC and her 42 U.S.C. § 1983 claim against Nation. The court will also address Plaintiff's state-law invasion of privacy and infliction of emotional distress claims.

### A. Plaintiff Has Abandoned Certain Claims Contained in Counts I, IV, and V of the Complaint by Failing to Address Them in His Opposition Brief

In his opposition brief, Plaintiff presents argument in support of a § 1983 sexual harassment claim, a Title VII sexual harassment claim, an invasion-of-privacy claim, and an emotional-distress claim. (Doc. # 45 at 21-31). However, Plaintiff has presented no argument in support of his Title VII retaliation claim included in Count V of his Complaint. Accordingly, the court concludes that Defendant ADOC is due to be granted summary judgment on the Title VII retaliation count because Plaintiff effectively abandoned that claim. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000) (holding that a state-law claim was effectively abandoned when a party failed to brief and argue the issue before the district court).[8]

Similarly, in his opposition brief, Plaintiff has not presented argument in support of his sexual harassment claim based upon a hostile work environment contained in Counts I and IV of his Complaint. Instead, Plaintiff has argued that Nation's sexual harassment against him is actionable under Title VII because it caused a tangible employment action (*i.e.*, his termination) to occur. (Doc. # 45 at 21-28). Moreover, Plaintiff has not argued that the harassment he faced was sufficiently severe or pervasive to alter the terms or conditions of his employment. (*See id.*). Accordingly, the court concludes that Plaintiff also has effectively abandoned any sexual harassment claim in Counts I or IV of the Complaint based upon a hostile work environment theory. *See Coalition for the Abolition of Marijuana Prohibition*, 219 F.3d at 1325-26.

---

[8]  To be clear, Plaintiff's retaliation count cannot be construed as a claim that Defendant ADOC retaliated against him for refusing Nation's sexual proposition. Plaintiff clearly alleged in Count V that ADOC retaliated against him for opposing and reporting sexual harassment. Thus, Count V clearly is directed at the alleged retaliation Nation committed after Plaintiff reported her harassment to other ADOC employees in 2014. (*See* Doc. # 1 at ¶¶ 17-18).

**B.    Plaintiff's Tangible Employment Action Sexual Harassment Claims is Not Due to be Dismissed on Improper Pleading Grounds**

In the Complaint, Plaintiff alleges that Nation sexually harassed him, that he complained to ADOC's management about the harassment, and that ADOC failed to take prompt remedial action.  (Doc. # 1 at ¶¶ 27, 29-30).  Plaintiff complains that the harassment deprived him "of income and other compensation and benefits."  (*Id.* at ¶ 36).  He **alleges** that ADOC terminated him in retaliation for "his opposition to and reporting of discrimination."  (*Id.* at ¶ 41).

In his opposition brief, Plaintiff argues that Defendants ADOC and Nation are liable for the sexual harassment committed against him because it resulted in his termination from ADOC.  (Doc. # 45 at 21-31).  Defendant ADOC responds that Plaintiff's Complaint failed to provide Defendants fair notice of any such sexual harassment claim.  (Doc. # 49 at 4-5).  According to Defendant ADOC, because the tangible employment action theory is not advanced in the Complaint, the claim must be dismissed.  (*Id.* at 5).  After a thorough review of the Complaint, the court disagrees.

Binding Eleventh Circuit precedent forecloses construing an opposition brief as an effective motion to amend the complaint.  *Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1228 (11th Cir. 2013).  In *Flintlock*, one party submitted a summary judgment brief that argued in support of two estoppel claims that were not clearly alleged in the complaint.  *Id.* at 1227.  The Eleventh Circuit recognized that district courts, faced with such arguments, sometimes "ignore what the respective parties alleged in their complaint and answer and [ ] consider their claims and defenses as depicted in the memoranda they file[ ] in support of or in opposition to a motion for summary judgment."  *Id.*  But, the Eleventh Circuit condemned this practice in no uncertain terms:

> This court's precedent foreclosed Well-Come's attempt to amend its complaint at the summary judgment stage without seeking leave of court pursuant to Rule 15(a)(2). Accordingly, the District Court should have disposed of Well-Come's claim with a statement that Well-Come failed to establish that ASRRG and ASIS issued a commercial general liability policy and excess/umbrella liability policy to Flintlock LLC, as alleged in paragraphs 6 and 7 of its complaint. We affirm the [district] court's judgment on that ground.

*Id.*

At the same time, a plaintiff is not obligated to detail the precise legal theory he or she intends to pursue in a complaint. *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016) (citing *Sams v. United Food & Commercial Workers Int'l Union, AFL-CIO, CLC*, 866 F.2d 1380, 1384 (11th Cir. 1989)). Rather, a complaint must merely place a defendant "on notice as to the claim being asserted against him and the grounds on which it rests." *Id.* A claim should not be dismissed for the mere failure to include a term of art if it provides fair notice of the claim being asserted against the defendant and otherwise meets the pleading standards in the Federal Rules of Civil Procedure. *See, e.g.*, *Gregory v. Quality Removal, Inc.*, No. 14-21480-CIV, 2014 WL 5494448, at *4-5 (S.D. Fla. Oct. 30, 2014) (declining to grant summary judgment on a Fair Labor Standards Act claim due to the plaintiffs' failure to specify that the claim was an "individual coverage" claim).

To be sure, Plaintiff's Complaint is not a model of drafting. Nevertheless, Count IV of the Complaint provided fair notice to Defendant ADOC that Plaintiff's sexual harassment claim rested on a hostile work environment theory and a tangible employment action theory. Plaintiff stated in Count IV that Nation's sexual harassment caused Plaintiff to lose pay and benefits. (Doc. # 1 at ¶¶ 28, 36). The only action alleged in the Complaint that caused Plaintiff to lose pay and benefits was his March 2015 termination. (*See id.* at ¶¶ 9-18). Thus, Plaintiff provided fair notice to ADOC that the sexual harassment claim involved a tangible employment action (*i.e.*,

his termination). The court acknowledges that Plaintiff specifically alleged that Nation's conduct contributed to a hostile work environment in the Complaint. (*Id.* at ¶ 33). But, Plaintiff did not expressly limit his Title VII claim to a hostile work environment claim, and he placed Defendant ADOC on notice that Nation's sexual harassment contributed to his termination when he alleged that he lost pay and benefits due to the harassment.[9] The court is not inclined to grant Defendant ADOC summary judgment on the sexual harassment claim due to Plaintiff's failure to plead more specific terms of art. *Cf. Gregory*, 2014 WL 5494448, at *4-5. Therefore, the court proceeds to address the merits of the tangible employment action sexual harassment claim.

### C.    A Genuine Issue of Material Fact Exists Regarding Whether Nation's Harassing Conduct was Unwelcome

Defendant ADOC argues that Plaintiff has failed to show that Nation's conduct was unwelcome because he did not report the conduct in accordance with ADOC policy. (Doc. # 33 at 28-29). To meet this element of a sexual harassment claim, a plaintiff must show that he "indicated that the alleged sexual advances were unwelcome" by his conduct. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986). The Supreme Court observed in *Meritor* that this element of a sexual harassment claim "presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact." *Id.* In this case, the court finds disputed testimony in the Rule 56 record that supports Plaintiff's claim of unwelcome harassment. Plaintiff has testified that he complained about Nation's harassment of him to Sullivan in writing in September 2014. (Doc. # 34-1 at 60-63). Moreover, he ceased conversing with Nation about matters unrelated to work after her alleged harassing conduct. (*Id.* at 89-90). Finally, Plaintiff stated during his deposition that Nation's sex-related comments to him were

---

[9] Defendant Nation has not argued for dismissal of the § 1983 claim against her on this ground. Therefore, the court need not consider whether Plaintiff provided fair notice of the § 1983 causes of action he intended to pursue against Defendant Nation in Count I of the Complaint.

"insensitive" and that he complained about Nation's lack of professionalism in response to the statements. (*Id.* at 73-75). The court recognizes that Plaintiff's failure to submit a timely sexual harassment complaint in accordance with ADOC's written policy may be evidence that he did not perceive the conduct to be offensive. *See Simmons v. Mobile Infirmary Med. Ctr.*, 391 F. Supp. 2d 1124, 1134 (S.D. Ala. 2005). Nevertheless, the court finds that Plaintiff's testimony presents a genuine factual issue as to whether Nation's harassment was unwelcome, and the credibility of that testimony is a jury question. *Meritor*, 477 U.S. at 68.

**D.    A Genuine Issue of Material Fact Exists Regarding Whether Nation's Conduct was Based on Plaintiff's Sex**

Defendant ADOC argues that Nation's harassing conduct was not based upon Plaintiff's sex because Nation made sexual comments to mixed-sex audiences and often did not direct the comments at particular persons. (Doc. # 33 at 29-30). It contends that Plaintiff has not identified a comparator similarly situated to him. (*Id.* at 30). In ADOC's reply brief, it claims that Nation was an "equal opportunity harasser" because an affidavit submitted by Plaintiff describes Nation as bisexual. (Doc. # 49 at 8-10).

A plaintiff "must show that her employer discriminated because of her membership in a protected group" in order to establish any Title VII claim, including a sexual harassment claim. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (*en banc*). The Eleventh Circuit has recognized a distinction between generalized sexual discussions and those directed at members of a particular sex. "Although gender-specific language that imposes a change in the terms or conditions of employment based on sex will violate Title VII, general vulgarity or references to sex that are indiscriminate in nature will not, standing alone, generally be actionable." *Id.* at 809. Similarly, sexual harassment does not fall under Title VII's ambit

where the harasser "makes sexual overtures to workers of both sexes." *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982).

Defendant ADOC's arguments that Nation's conduct towards Plaintiff was not based on sex are unavailing. While Nation allegedly made many indiscriminate comments about sex to men and women who worked in the canteen, Plaintiff testified that she singled him out and queried him about his sex life in quite explicit terms. (Doc. # 34-1 at 73-75). No Rule 56 evidence suggests that Nation questioned female employees about sexual matters. And, no evidence in the Rule 56 record shows that Nation made sexual overtures to female workers. It is not enough for Defendant ADOC to point to evidence that Nation was bisexual where the Rule 56 record indicates that she made sexual overtures to male employees, but contains no evidence that she made them to female employees. *See Livingston v. Marion Bank & Tr. Co.*, 30 F. Supp. 3d 1285, 1306 (N.D. Ala. 2014) (rejecting an "equal opportunity harasser" argument where the defendant failed to identify evidence that the harasser subjected male employees to the treatment that the female plaintiff faced). As such, genuine issues of fact exist regarding whether Nation harassed Plaintiff because of his sex.

## E. Plaintiff has Presented Triable Factual Issues Regarding the Causal Link Between Nation's Harassment and the Termination

In her summary judgment brief, Defendant Nation contends that any gender discrimination she is alleged to have committed did not cause Plaintiff's termination because she did not make the termination decision. Rather, Commissioner Sharp terminated Plaintiff on Warden Price's recommendation and based on Plaintiff's long disciplinary history. (Doc. # 38 at 13-14). Nation argues not only that Sharp conducted an independent investigation, but also that the termination occurred nearly two months after her own resignation. (*Id.* at 14). Plaintiff responds that a causal link exists between his rejection of Nation's sexual advances and his

termination because Nation created his disciplinary history, as she had the authority to write him up. (Doc. # 45 at 27). Plaintiff argues that Nation abused this authority by disciplining him ten times between October 2013 and March 2015. (*Id.* at 28). Ultimately, though, the court concludes that Plaintiff has failed to present sufficient Rule 56 evidence to establish a causal relationship between any harassment and his termination.

"Title VII prohibits sex-based discrimination that alters the terms and conditions of employment."[10] *Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship*, 490 F.3d 1302, 1308 (11th Cir. 2007). "To establish sexual harassment under Title VII, an employee must prove '(1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists.'" *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006) (quoting *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004)). Generally, sexual harassment claims can be classified into two categories based upon whether the harassment resulted in a "tangible employment action." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000). *See also Cotton*, 434 F.3d at 1231-32 (discussing the elements of a Title VII sexual harassment claim and how they differ in a tangible employment action case).

A sexual harassment claim based upon a tangible employment action differs from one premised upon a hostile work environment in two important respects. First, the tangible employment action itself meets the fourth element, since a "tangible employment action is

---

[10] Sexual harassment claims under § 1983 are analyzed under the same framework as sexual harassment claims under Title VII, so the court will discuss these claims together. *See Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n. 16 (11th Cir. 1982).

defined in a way that includes a change in the terms and conditions of employment." *Hulsey*, 367 F.3d at 1245. Second, "[a]n employer is liable under Title VII if it (even unknowingly) permits a supervisor to take a tangible employment action against an employee because she refused to give in to his sexual overtures. That liability exists regardless of whether the employee took advantage of any employer-provided system for reporting harassment." *Id.*

To establish a sexual harassment claim based upon a tangible employment action, a plaintiff must, of course, establish "a causal link between the tangible employment action and the sexual harassment." *Cotton*, 434 F.3d at 1231. When the harasser is the decisionmaker responsible for a particular employment action, a plaintiff can rely on an inference that the action was causally related to the decisionmaker's harassment. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1247 (11th Cir. 1998). In this case, Plaintiff cannot rely on such an inference because Commissioner Sharp, not Nation, made the decision to terminate him.[11] (Doc. # 34-19).

Plaintiff contends that the court should apply a "cat's paw" causation theory because (1) Nation held authority to write him up for rules infractions, (2) Nation abused that authority to recommend discipline against him for minor rules violations, and (3) "Price's reliance on Nation's disciplinary actions towards [Plaintiff] laid the foundation for and ultimately led to his discharge." (Doc. # 45 at 27-28). Under a cat's paw theory, "causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). But, if the "decisionmaker conducts his own evaluation and makes an independent decision, his decision is free of the taint of a biased subordinate." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1270 (11th Cir. 2001). In the

---

[11] Even if Commissioner Sharp relied on Warden Price's recommendation without any independent review, Plaintiff still could not rely on the type of inference discussed in *Llampallas* because Price did not harass Plaintiff.

context of analyzing a discrimination claim under a different statute with a "motivating factor" causation standard, the Supreme Court explained that an employer "effectively delegate[s] the factfinding portion of the investigation to the biased supervisor" if it "relies on facts provided by the biased supervisor." *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (addressing a discrimination claim under the Uniformed Services Employment and Reemployment Rights Act). "[T]he supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.*

Here, the court concludes that a reasonable factfinder could find a causal relationship between Nation's allegedly biased conduct and ADOC's decision to terminate Plaintiff. Price conceded during her deposition that the January 2015 incident, standing alone, was not severe enough to justify termination. (Doc. # 39-3 at 78, 93). Plaintiff's termination thus rested on the January 2015 incident *and* his prior record of misconduct. When reviewing Plaintiff's prior discipline, it is clear that some of the reprimands and suspensions Plaintiff received were based on Nation's testimony against him. For example, ADOC suspended Plaintiff for two days based on Nation's report that he had sold items to inmates which were not included on the inmates' hand-written store slips. (Doc. # 39-13 at 1-2). Nothing in the Rule 56 record indicates that this suspension was based on anything other than Nation's testimony against Plaintiff. Moreover, ADOC suspended Plaintiff for three days because of Nation's report that Plaintiff distributed items in excess of the allotted limits. (Doc. # 39-16 at 2). Plaintiff testified that Nation never distributed the written protocols at issue to him before using them at the disciplinary hearing to justify the infraction. (Doc. # 34-1 at 188). Nevertheless, ADOC suspended him for violating the protocols. The Rule 56 record does not contain undisputed evidence showing that these

suspensions would have been justified in the absence of Nation's recommendations.[12]  ADOC's decisionmakers considered Plaintiff's disciplinary history in deciding whether to terminate him (*see* Doc. # 34-19 at 2), and Price's own testimony indicates that the termination was not entirely justified absent Plaintiff's lengthy disciplinary history.  Thus, the court concludes that a reasonable factfinder could discern a causal relationship between Nation's biased recommendations against Plaintiff and his ultimate termination. That is, the record shows the independent investigation here took Plaintiff's prior discipline into account, and ADOC's decisionmakers did not find that the termination was entirely justified in the absence of discipline based on Nation's allegedly biased reports against Plaintiff.  *Cf. Staub*, 562 U.S. at 421.

## F.    Plaintiff's Invasion of Privacy Claim Against Nation Fails Under Alabama Law

In Count II of the Complaint, Plaintiff claims that Defendant Nation violated his right to privacy through her invasive conduct.  (Doc. # 1 at ¶¶ 22-23).  He specifies in his opposition brief that Nation invaded his privacy "by asking about his sex life soon after the passing of his wife, which was extremely insensitive."  (Doc. # 45 at 29).

Under Alabama law, the invasion of privacy tort consists of four distinct types of claims: "1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use."  *Phillips v. Smalley Maint. Servs., Inc.*, 435 So. 2d 705, 708 (Ala. 1983) (citing *Norris v. Moskin Stores, Inc.*, 132 So. 2d 321 (Ala. 1961)).  Plaintiff's claim clearly falls under

---

[12]  On three occasions, ADOC disciplined Plaintiff after he waived a hearing and accepted the punishment. (*See* Docs. # 39-14 at 4; 39-15 at 5; 39-17 at 4).  It is unclear whether these disciplinary actions were entirely justified based on Plaintiff's waiver and concession alone.  ADOC decisionmakers also referred to time records to justify disciplining Plaintiff for tardiness.  (Docs. # 39-12 at 2; 39-14 at 2; 39-18 at 2).  While the time records offer objective evidence to support Plaintiff's rule infractions, it is unclear whether the records entirely justified ADOC's disciplinary actions, as the Rule 56 record does not show whether ADOC disciplined tardy workers based on time records or supervisors' reports.

the first type of claim described in *Smalley*. Among other grounds, a plaintiff can establish such an invasion of privacy claim where the defendant's intrusion into his private activities would "outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Id.* (emphasis omitted) (quoting *Norris*, 132 So. 2d at 176-77, and adopting *Restatement (Second) of Torts*, § 652B (1977)). A plaintiff does not need to show that the defendant acquired information about the plaintiff's private activities or that the defendant communicated private information to a third party in order to succeed on an intrusion-based invasion of privacy claim. *Id.* at 709.

In *Phillips*, the Alabama Supreme Court held that a plaintiff who had suffered through "intrusive and coercive sexual demands" from the president and principal owner of her employer could maintain an invasion of privacy claim, even in the absence of conduct analogous to a trespass. *Id.* at 710-11. The Court expressed that "[o]ne's emotional sanctum is certainly due the same expectations of privacy as one's physical environment." *Id.* at 711. The Court reasoned that the following facts supported a viable invasion of privacy claim:

> During Plaintiff's tenure with Defendants, she was subjected to intrusive demands and threats, including an inquiry as to the nature of sex between her and her husband. According to testimony, such incidents were occurring two or three times each week. Additionally, we note from Plaintiff's testimony of record the repulsive manner in which Smalley's solicitations were made. On one occasion, he struck her across the buttocks with his hand. On still another occasion, he began papering his office window, thus obscuring the view of those in the surrounding area, in pursuit of what he hoped would be the consummation of lurid propositions to Plaintiff. Smalley, aware of the importance to Plaintiff of her regular income, rendered her, in effect, an "economic prisoner."

*Id.* Alabama courts have allowed intrusion-based invasion of privacy claims in other cases where the plaintiffs showed a series of harassing conduct by supervisors. *See, e.g.*, *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 324 (Ala. 1989) (affirming invasion of privacy verdict where plant supervisor invited subordinates to swim nude in his pool, made lewd and

objectionable statements about masturbation and the subordinates' sex lives, commented on a subordinate's breasts, followed a subordinate on one occasion, and touched subordinates' shoulders, arms, and necks on multiple occasions); *Cunningham v. Dabbs*, 703 So. 2d 979, 980-82 (Ala. Civ. App. 1997) (reversing summary judgment for defendant on invasion of privacy claim where plaintiff's supervisor "frequently rubbed her shoulders and repeatedly made lewd and suggestive comments to her").   The Alabama Supreme Court has provided the following dividing line for analyzing such invasion of privacy claims: "While asking a co-employee for a date and making sexual propositions usually do not constitute an invasion of privacy, extensive inquiries into one's sex life or looking up one's skirt may constitute an invasion of privacy." *Ex parte Atmore Comm. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998).

Here, Plaintiff has not shown that Nation committed a sufficient degree of intrusive conduct to support a triable invasion of privacy claim.  The Rule 56 record, when considered in the light most favorable to Plaintiff, shows that Nation once asked him invasive questions about his sex life while propositioning him, once touched his face and commented on his appearance, and regularly made lewd statements about her sex life to subordinates in a manner not directed at Plaintiff.  The court does not condone Nation's conduct, but the conduct committed by Nation simply falls short of the sexual harassment at issue in cases like *Phillips*, *Busby*, or *Cunningham*. Indeed, the Alabama Supreme Court has distinguished between isolated or one-time sexual propositions and "extensive inquiries" into another's sex life, and Nation's conduct towards Plaintiff falls within the former category.   *Atmore Comm. Hosp.*, 719 So. 2d at 1194. Accordingly, the court concludes that no reasonable jury could find Nation liable for wrongful intrusion into Plaintiff's sexual affairs, and Nation is due to be granted summary judgment on the invasion of privacy claim asserted against her in Count II of the Complaint.

### G. Plaintiff's Outrage Claim Against Nation Fails Under Alabama Law

In Count III of the Complaint, Plaintiff raises an intentional infliction of emotional distress or outrage claim against Defendant Nation for her conduct. (Doc. # 1 at ¶¶ 24-26). He argues in his opposition brief that Nation's conduct is at least as egregious as the conduct committed by the supervisor in *Busby*. (Doc. # 45 at 30-31).

Alabama courts traditionally have recognized the tort of outrage in three contexts: (1) "wrongful conduct in the family-burial context," (2) "barbaric methods employed to coerce an insurance settlement," and (3) "egregious sexual harassment." *Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 631 (Ala. 2010) (quoting *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)). These three kinds of categories are not necessarily the only sufficient type of conduct that could plausibly plead intentional infliction of emotional distress. *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011). Nevertheless, the guiding inquiry is ultimately whether a plaintiff has alleged facts "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980). Whether a claim presents the requisite level of outrageousness to sustain a claim for intentional infliction of emotional distress is a question of law. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1258 (11th Cir. 2016).

In *O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011), *abrogated in part on other grounds by Ex parte Vanderwall*, 201 So. 3d 525 (Ala. 2015), the Alabama Supreme Court "affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years,

resulting in the boy's drug addiction." *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011). Defendant Nation, in essence, argues that she should be granted summary judgment because her conduct is less egregious than that at issue in *O'Rear*. (*See* Doc. # 38 at 21-23). She cites no other authority in the outrage section of her summary judgment brief. The court is not convinced by this argument. Having said that, the court is unconvinced that Nation's harassment -- even viewed in the light most favorable to Plaintiff -- rises to the level of egregious harassment.

In *McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649 (Ala. 1986), for example, the Alabama Supreme Court affirmed a summary judgment granted for an outrage claim premised upon sexual propositions made by an owner and president to an employee, the owner's attempts to kiss her, the owner's touching of her, and the employee's termination after she rejected the owner's overtures. *Id.* at 650-51. The Court concluded that the plaintiff's outrage claim failed because the owner's conduct "extended to 'mere insults, indignities, threats or annoyances' for which the law will not hold one liable in tort." *Id.* at 651 (alteration adopted) (quoting *Restatement (Second) of Torts*, § 46, Comment d (1965)). Similarly, Nation's harassing conduct -- which did not include sexual assault or a pattern of harassing conduct directed towards Plaintiff -- is not so outrageous as to constitute egregious harassment. *See, e.g.*, *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 739 (11th Cir. 2016) (affirming summary judgment to defendant on an outrage claim and commenting that "[n]o doubt the act of grabbing another's head and, while fully clothed, making pelvic thrusts in his face is boorish, vulgar, and completely unacceptable, but we cannot say that this one-time incident was so outrageous as to satisfy the requisite element of the tort of outrage"). Thus, Defendant Nation is entitled to summary judgment on Plaintiff's outrage claim contained in Count III of the Complaint.

**IV.     Conclusion**

For the reasons explained above, the court concludes that Defendants' motions for summary judgment (Docs. # 32, 37) are due to be granted in part and denied in part. Plaintiff's Title VII retaliation claim in Count V of the Complaint is due to be dismissed with prejudice. Similarly, Plaintiff's Title VII and § 1983 hostile work environment claims are due to be dismissed with prejudice. Plaintiff's state-law claims in Counts II and III **a**re due to be dismissed with prejudice as well, as the claims are not viable under Alabama law. But, Plaintiff's Title VII and § 1983 sexual harassment claims are due to be proceed under a tangible employment action theory. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this June 13, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE